**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
TRUSTEES OF LABORERS UNION LOCAL
NO. 1298 OF NASSAU AND SUFFOLK
COUNTIES BENEFIT FUNDS,

                 Plaintiffs,

               - against -

ANNEX GENERAL CONTRACTING, INC.,

               Defendant.
-----------------------------------------------------------X

**REPORT AND RECOMMENDATION**

CV 11-1569 (DRH) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

Plaintiffs commenced this action against Defendant Annex General Contracting, Inc. ("Annex General" or "Defendant") seeking (1) to collect delinquent employee benefit plan contributions owed by Defendant and (2) an audit of Defendant's books and records. DE 1. Plaintiffs moved for a default judgment after the Defendant failed to answer or otherwise move in response to the Complaint. DE 3. Judge Hurley entered a default judgment against the Defendant and referred this matter to me for an inquest to determine and recommend what damages, if any, are appropriate, including attorney's fees. *See* Hon. Denis R. Hurley Electronic Order dated July 11, 2011.

**II.    BACKGROUND**

Defendant in this action is in the road construction business. *See* June 14, 2011 Affidavit of Frank Damiano, Jr. ("June 2011 Damiano Aff.") [DE 6] ¶ 2. Plaintiffs are the Trustees of Laborers Union Local No. 1298 of Nassau and Suffolk Counties Benefit Funds ("Plaintiffs" or

the "Trustees"). The Trustees are fiduciaries of jointly administered multi-employer labor management trust funds (the "Funds") within the meaning of ERISA § 3(21)(A) and § 502(a)(3), 29 U.S.C. § 1002(21)(A) and 1132(a)(3). Compl. ¶ 4. The Trustees provide fringe benefits to eligible employees, retirees and their dependants on whose behalf Annex is required to contribute funds pursuant to the Collective Bargaining Agreement ("CBA")[1] between The Long Island Contractors Association, Inc. and the Road & Heavy Construction Laborers Local Union No. 1298 (the "Union"). *See id.* ¶ 6. Plaintiffs allege that Annex General is an "Employer" within the meaning of ERISA. *Id.* ¶ 9. Plaintiffs further allege that from July 1, 2009 through at least December 31, 2009, Defendant failed to make the required contributions for work performed by covered employees under the terms of the CBA and refused to allow an audit by the Funds and the Union as permitted by the CBA. *See Id.* ¶¶ 15, 36.

### III. APPLICABLE STANDARD

A default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true. *Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-CV-1878, 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *cert. denied*, 506 U.S. 1080 (1993)); *BMG Music v. Pena*, No. 05-CV-2310, 2007 WL 2089367, at *2 (E.D.N.Y. July 19, 2007).

A default judgment entered on the well-pleaded allegations in the complaint establishes a defendant's liability. *See Garden City Boxing Club, Inc. v. Morales*, No. 05-CV-0064, 2005 WL 2476264, at *3 (E.D.N.Y. Oct. 7, 2005) (citing *Bambu Sales, Inc. v. Ozak Trading, Inc.*, 58 F.3d

---

[1] A copy of the CBA is annexed to the June 2011 Damiano Affidavit as Exhibit 1.

849, 854 (2d Cir. 1995)). The only question remaining, then, is whether Plaintiffs have provided adequate support for the relief they seek. *Greyhound Exhibitgroup, Inc.*, 973 F.2d at 158. The moving party need only prove "that the compensation sought relate to the damages that naturally flow from the injuries pleaded." *Id.* at 159.

In determining damages not susceptible to simple mathematical calculations, Federal Rule 55(b)(2) gives courts discretion to determine whether an evidentiary hearing is necessary or whether to rely on detailed affidavits or documentary evidence. *Action S.A. v. Marc Rich and Co., Inc.,* 951 F.2d 504, 508 (2d Cir. 1989). The moving party is entitled to all reasonable inferences from the evidence it offers. *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981).

## IV.    DAMAGES

Plaintiffs seek to recover damages in the amounts of $26,946.00 in unpaid contributions to the Fund; $2,694.60 in interest calculated at a rate of ten (10%) percent; $2,694.60 in liquidated damages calculated at a rate of ten (10%) percent; $2,300.00 in attorney's fees; and $525.00 for costs and disbursements. *See* Statement of Damages, DE 4-5. As discussed further below, Plaintiffs also apparently seek an audit of Defendant's books.

Plaintiffs have submitted the following documents in support of their request for an award of damages: (A) the June 13, 2011 Affirmation of Danielle Carney, outside counsel for Plaintiffs, to which exhibits are annexed, including a "Fund Office calculation sheet" and "Statement of Damages" ("Carney Aff. I") [DE 4][2]; (B) the June 13, 2011 Affirmation of

---

[2] The version of this document filed on ECF was missing Exhibits A, B, and D. The Court, however, has relied on the complete version which was submitted directly to Chambers and is directing the Clerk's Office to make the necessary changes on ECF.

Attorney Carney describing the attorney's fees incurred by Plaintiffs in this action ("Carney Aff. II") [DE 5]; (C) the June 14, 2011 Affidavit of Frank Damiano, Jr., the Fund Manager of the Union, to which exhibits are annexed, including the CBA ("Damiano Aff. I") [DE 6],[3] (D) the August 8, 2011 Affidavit of Frank Damiano, Jr. ("Damiano Aff. II") [DE 13], and (E) the August 11, 2011 Affirmation of Attorney Carney to which her firm's billing statement is annexed ("Carney Aff. III") [DE 14]. The Court finds Plaintiffs' submissions to be sufficient evidence to form the basis for an award of damages. The following discussion addresses the relief to which Plaintiffs are entitled based upon the information set forth in Plaintiffs' submissions which have now been evaluated by the Court.

    **A.    Audit**

The Court has some doubts regarding whether Plaintiffs are seeking an audit here in addition to monetary damages. In the Complaint, Plaintiffs seek an audit of the Defendant's books and records for purposes of determining the amount of unpaid benefit contributions due for the period January 1, 2009 through December 31, 2009. *See* Compl. ¶ 35. Frank Damiano states that Plaintiffs are seeking an audit for an unspecified period. *See* Damiano Aff. I ¶ 1. Both the proposed default judgment submitted by Plaintiffs and the request for entry of default judgment seek an audit of Defendant's books and records from July 1, 2009 through December 31, 2009. *See* DE 3, 6. None of the other documents submitted by Plaintiffs mention an audit or explain the basis for the request. In light of the fact that a request for an audit is referenced in multiple documents, the Court assumes that Plaintiffs do seek an audit. The Court further

---

[3]    The version of this document filed on ECF contains an incorrect Exhibit D. The Court relied on the version of this document which was submitted to Chambers.

assumes, based on a review of the Complaint and the other documents submitted, that the period for which Plaintiffs request an audit is July 1, 2009 through December 31, 2009.

The Policy for Collection of Delinquent Contributions (the "Policy") adopted by the Trustees provides that the Trustees have the "right to establish a random audit program" and Section 4 of the Policy sets forth the Trustees' payroll audit policy. June 2011 Damiano Aff., DE 6, Ex. D at 1, 6-8. Although Annex General did not sign the Policy, Article VI of the CBA provides in several places that "[t]he contractor agrees to comply with the trust agreement, by-laws, rules and regulations of the [Fund] as the same may be amended from time to time and the aforesaid trust agreement, by-laws, rules and regulations shall be a part of this agreement as though the same were fully set forth herein." *See, e.g.,* CBA, DE 6-2, at 20. Since the Policy contains rules and regulations of the Fund, it is enforceable against Annex General pursuant to the CBA. Based on the language of the Policy, as well as applicable case law, the Court finds that Plaintiffs are entitled to an audit here. *See, e.g.*, *Empire State Carpenters Welfare v. M.V.M. Contracting Corp.*, No. CV 10-1801, 2011 WL 887726, at *2 (E.D.N.Y. Jan. 31, 2011) (recommending that the default judgment "include an order directing defendant to permit and cooperate in an audit of its books and records"); *Trustees of the Local 7 Tile Ind. Welfare Fund v. Exceptional Flooring, Inc.*, No. 10 CV 1883, 2011 WL 3625335, at *2 (E.D.N.Y. June 30, 2011) (finding in the context of a default judgment that "plaintiffs are entitled to audit defendants' books and records" pursuant to the collective bargaining agreement).

The Court respectfully recommends to Judge Hurley than Annex General be ordered to submit to an immediate audit of its books and records. If Annex General fails to submit to an audit within the time period prescribed, then the Court further recommends that Plaintiffs be

5

awarded monetary damages as discussed below. *See Ferrara v. Stallone Testing Labs., Inc.*, No. 10-CV-901, 2011 WL 3847123, at *5 (E.D.N.Y. Aug. 5, 2011); *Gesualdi v. Giacomelli Tile Inc.*, No. 10-CV-4841, 2011 WL 4352548, at *2 (E.D.N.Y. Aug. 18, 2011).

### A. Monetary Damages

#### 1. *Unpaid Benefit Contributions*

Plaintiffs seek to recover unpaid benefits earned by the covered employees under the CBA for the period from July 1, 2009 through December 1, 2009. Plaintiffs allege that Defendant was required to make certain contributions in accordance with the terms of the CBA, and failed to do so. In light of Defendant's default, these allegations are accepted as true and Defendant is liable for the unpaid contributions to the Funds.

Plaintiffs seeks unpaid benefit contributions in the amount of $26,946.00. In support of this request, Plaintiffs submitted a "Fund Office calculation sheet" estimating the amounts owed based on a "standard laborer's hours of 160 hours for a 4 week month and 200 hours for a 5 week month." *See* August 2011 Damiano Aff., DE 13 ¶ 2.a. The hours were multiplied by "the applicable rate of $24.95." *Id.* Because Annex General failed to provide any remittance reports and failed to respond to Plaintiffs' request for an audit, Plaintiffs estimated the amounts owed.

Plaintiffs do not describe how the $24.95 multiplier was determined. The Court assumes that the multiplier is the amount of fringe benefit contributions owed per hour. Annex General's required fringe benefit contributions are set forth in Article VI of the CBA which provides that Annex General must contribute the following amounts for each hour worked by laborers:

- $7.37 per hour to the Welfare Fund

- $7.97 per hour to the Pension Fund[4]
- $.25 per hour to the Legal Services Fund
- $2.00 per hour to the Vacation Fund
- $4.25 per hour to the Annuity Fund
- $.50 per hour to the Laborers Local 1298 Joint Apprenticeship and Training Fund,
- $1.05 per hour as Working Dues Check-Off
- $.05 per hour as New York State Laborers Political Action Committee Check-Off
- $.10 per hour to the New York State Laborers Employers Cooperation and Education Trust Fund
- $.05 per hour to the New York State Laborers Health and Safety Trust Fund
- $.25 to the Industry Promotional Fund

*See* CBA at 20-24, DE 6-2. These contributions total $23.84, not $24.95, thus the Court will use a multiplier of $23.84 in calculating damages.

Turning next to the number of hours for which contributions are owed, Plaintiffs estimated the amounts owed based on a "standard laborer's hours" of 160 hours for a four (4) week month and 200 hours for a five (5) week month. *See* Damiano Aff. II ¶ 2.a. The Court notes that Plaintiffs' calculations assume that contributions were owed for only one laborer. Given that Defendant is liable for a failure to make contributions to the Fund, there is a reasonable basis for concluding that contributions for at least one laborer are owed.

The Policy for Collection of Delinquent Contributions (the "Policy") provides that in the event that an employer fails to submit the required remittance reports or supply the books and records for an audit, the Trustees are permitted to estimate the amount due. Damiano Aff. I, Ex. D. The estimate is to be made in the following manner:

> Contributions would be calculated for any month by adding using [sic] the number of hours for the month in which the largest number of hours were reported in the previous twelve (12) reports submitted by the Employer. An additional 10% may be added onto the prior

---

[4] The Pension Fund contribution amount varies depending on the time period. For the time period at issue here, July 1, 2009 through December 1, 2009, the applicable rate was $7.97.

7

> hours. The total number of hours for the unreported period as determined aforesaid shall be multiplied by the current contribution rate, and the amount of contributions so computed shall be deemed the amount due from the Employer, together with any sums calculated pursuant to CBA and standard collection policy for the purposes of any legal proceeding.

*Id*.

In addition to the Policy, there is case law supporting Plaintiffs' right to estimate the amount owed. *See Finkel v. Jones Lang LaSalle Ams., Inc.*, No. 08-CV-2333, 2009 WL 5172869, at *4 n.1 (E.D.N.Y. Dec. 30, 2009) (estimating amounts owed based on last weekly payroll report submitted by the company); *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 161 n.5 (E.D.N.Y. 2008) (estimating amounts due based on payroll submissions provided by union employees); *Finkel v. Tech Man, Inc.*, No. 06-CV-2264, 2007 WL 433399, at *2-3 (E.D.N.Y. Feb. 6, 2007) (estimating amounts owed based on most recent payroll support submitted by company).

In this case, Plaintiffs could not utilize the estimation formula set forth in the Policy because Annex General never provided any remittance reports; thus, Plaintiffs based the estimation on a "standard laborer's hours." Damiano Aff. II ¶ 2.a. In light of Annex General's failure to present any remittance reports, it is reasonable to use the hours in a standard work week as opposed to the formula set forth in the Policy. *See Jones Lang LaSalle Ams., Inc.*, 2009 WL 5172869, at *4 n.1 (noting that "[d]efendant's failure or inability to provide payroll information does not justify penalizing plaintiff, who had no alternative but to estimate the amounts due"). The Court notes that this approach is conservative in that Plaintiffs did not attempt to include any overtime hours or add an additional ten percent (10%) as permitted by the Policy. Since the estimation was not made in accordance with the formula set forth in the policy, however, the

Court further recommends, if Judge Hurley adopts this Report and Recommendation, that Defendant be permitted to present evidence (in a time frame determined by Judge Hurley) demonstrating that Plaintiffs' estimation is incorrect.

The Court points out that Plaintiffs' estimate of a standard work week is inaccurate. On the "Fund Office calculation sheet" annexed as Exhibit C to the Damiano Affidavit I, Plaintiffs describes the months of July, August, and October 2009 as 160 hour, 4-week months and describes the months of September and November 2009 as 200 hour, 5-week months. December 2009 is described as a 160 hour month, but the calculation for amounts owed for that month shows that Plaintiffs treated December 2009 as a 200 hour month. None of the months in the period at issue are 4-week or 5-week months. Rather than rounding the weeks up or down (which Plaintiffs did not accurately do in any event), a more reasonable approach would be to calculate the number of work days in each month and multiply that number by 8 hours. Utilizing this method, the Court calculates that Defendant owed contributions for 1,056 hours (132 working days[5] x 8 hours) which, when multiplied by the applicable contribution rate of $23.84, yields a principal unpaid contribution amount of $25,175.04.

Accordingly, I respectfully recommend to Judge Hurley that damages be awarded in favor of Plaintiffs in the amount of $25,175.04 for unpaid benefit contributions.

### 2. *Interest on Unpaid Benefit Contributions*

Under ERISA, the Trustees are entitled to recover interest on unpaid fringe benefit contributions at "the rate provided under the plan, or if none, 'the rate prescribed under section

---

[5] The working days for the months of July through December 2009 was calculated as follows: July (23) + August (21) + September (22) + October (22) + November (21) + December (23) = 132.

6621 of Title 26.'" *Cement & Concrete Workers Dist. Council Welfare Fund v. Azzarone Contracting Corp.*, No. 06-CV-2953, 2007 WL 2712314, at *3 n.4 (E.D.N.Y. Sept. 13, 2007) (quoting 29 U.S.C. § 1132(g)(2)). Here, Plaintiffs contend it is entitled to interest at a rate of 10% on the outstanding and unpaid benefit contributions. *See* Statement of Damages, DE 4-5. The CBA provides, in pertinent part, as follows:

> If the Trustees or the Fund Administrator of the Benefit Fund is required to utilize the services of an attorney to collect employer delinquencies or the services of an accountant to conduct an audit of the employer's books and records as the result of the employer's delinquency, the delinquent employer may be required to pay, in addition to the delinquency, interest at a rate of ten percent (10%) per annum . . . .

CBA, DE 6-2, at 26.

Using the principal amount of $26,946.00, Plaintiffs calculate the interest owed as $2,694.60. *See* Statement of Damages, DE 4-5. Plaintiffs apparently calculated the interest owed as ten percent (10%) of the principal unpaid contribution amount, as opposed to ten percent (10%) of the principal unpaid contribution amount *per annum*. When the appropriate principal figure of $25,175.04 is used, ten percent (10%) per annum interest is $2,517.50, and the per diem interest is $6.90 ($2.517.50 ÷ 365). The CBA does not specify when pre-judgment interest beings to accrue. Since Plaintiffs are not entitled to interest until it is required to utilize the services of an attorney, the Court finds that the first day on which an attorney billed for its services is appropriate. In this case the applicable date is April 20, 2010. *See* Carney Aff. III, Ex. 1.

Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded interest on the delinquent benefit contributions in the amount of $6.90 per day from April 20, 2010 until the date judgment is entered.

### 3. *Liquidated Damages*

Plaintiffs also seek an award of liquidated damages equal to ten percent (10%) of the unpaid contributions amount. *See* Statement of Damages, DE 4-5. Plaintiffs are entitled to liquidated damages "in an amount not in excess of 20 percent of the principal amount due," pursuant to 29 U.S.C. § 1132(g)(2)(C)(ii). *See Cement & Concrete Workers Dist. Council Welfare Fund,* 2007 WL 2712314, at *3.

Specifically, ERISA provides that Plaintiffs are entitled to liquidated damages in "an amount equal to the greater of – (i) interest on the unpaid contributions, or (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C).

The CBA provides for "liquidated damages in the amount of ten percent (10%) of the total delinquency." DE 6-2 at 26. Thus, the liquidated damages amount provided for under the plan would be $2,517.50. Assuming for illustrative purposes that judgment was being entered today, March 2, 2012, the amount of interest due would be $4,974.90 ($6.90 per diem rate x 721 days since April 20, 2010). Because the amount of interest due is greater than the liquidated damages provided for under the plan, Plaintiffs are entitled to use the interest figure to calculate liquidated damages. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded liquidated damages in the sum of $6.90 per day from April 20, 2010 until the date judgment is entered.

### *4. Attorney's Fees and Costs*

Plaintiffs seek reimbursement for attorney's fees and costs. "An award of costs and reasonable attorney fees, in an action such as this to recover unpaid union fringe benefit contributions, is mandatory." *Mason Tenders Dist. Council Welfare Fund. v. A.G.I., Inc.*, No. 03-CV-1238, 2005 WL 1565831, at *6 (S.D.N.Y. June 8, 2005) (citing, *inter alia*, 29 U.S.C. § 1132(g)(2)). The CBA also provides for "legal fees in the amount of fifteen percent (15%) of the delinquent amount." *See* DE 6-2 at 26. A reasonable interpretation of this provision is that Plaintiffs are entitled to legal fees incurred in an amount not greater than fifteen percent (15%) of the delinquent amount.

Plaintiffs request attorney's fees in the amount of $2,300.00.[6] Courts within the Second Circuit determine an appropriate award of attorney's fees according to the standard of a "presumptively reasonable fee." *See Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183, 190 (2d Cir. 2008). This number should represent "what a reasonable, paying client would be willing to pay" for legal services rendered, and a court should consider the following factors in its calculation:

> [T]he complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation

---

[6] Plaintiffs originally sought $2,000.00 in attorney's fees, *see* Carney Aff. I ¶ 12. However, the most recent attorney affirmation requests $2,300.00 in attorney's fees, *see* Carney Aff. III ¶ 6.

> himself, whether an attorney might have initially acted *pro bono* (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184. The "presumptively reasonable fee" is comprised of a "reasonable hourly rate multiplied by a reasonable number of expended hours." *Finkel v. Omega Comm'n Servs., Inc.,* 543 F. Supp. 2d 156, 164 (E.D.N.Y. 2008) (citations omitted). "The party seeking reimbursement of attorneys' fees must demonstrate the reasonableness and necessity of hours spent and rates charged." *Id.* (citing *New York State Ass'n for Retarded Children, Inc. v. Carey,* 711 F.2d 1136 (2d Cir.1983)).

To determine reasonable hourly rates, the Court notes this Circuit's adherence to the forum rule which states that district courts should generally use the prevailing hourly rates in the district where it sits. *See Polk v. N.Y. State Dep't of Corr. Servs.,* 722 F.2d 23, 25 (2d Cir. 1983). "[T]he burden is on the fee applicant to produce satisfactory evidence . . . that the requested rates are in line with those prevailing [market rates] in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson,* 465 U.S. 886, 896 n.11, 104 S. Ct. 1541 (1984). The Court must also, "in exercising its considerable discretion," consider the factors enumerated by the Fifth Circuit in *Johnson v. Georgia Highway Express,*

*Inc.,* 488 F.2d 714 (5th Cir.1974)[7] and remain mindful that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively." *Arbor Hill,* 522 F.3d at 190.

In 2011, the Second Circuit affirmed a district court decision holding that the prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour. *Konits v. Karahalis*, No. 10-CV-2157, 2011 WL 310318, 409 Fed. Appx. 418, 422-23 (2d Cir. 2011). Similarly, another court has observed that "reasonable fees in this district vary from $200 to $375 per hour for partners and $100 to $295 per hour for associates" and $70 to $80 for paralegals or legal assistants. *Penberg v. HelathBridge Mgmt.*, No. 08-CV-1534, 2011 WL 1100103, at *6-7 (E.D.N.Y. March 22, 2011).

To determine whether the number of hours spent by Plaintiffs' counsel was reasonable, the Court must "'use [its] experience with the case, as well as [its] experience with the practice of law, to assess the reasonableness of the hours spent . . . in a given case.'" *Fox Indus., Inc. v. Gurovich,* No. CV 03-5166, 2005 WL 2305002, at *2 (E.D.N.Y. Sept. 21, 2005) (quoting *Clarke v. Frank,* 960 F.2d 1146, 1153 (2d Cir.1992)). A court should "exclude hours that were 'excessive, redundant, or otherwise unnecessary' to the litigation . . . ." *Cho v. Koam Medical Servs. P.C.,* 524 F. Supp. 2d 202, 209 (E.D.N.Y. 2007) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). A party seeking an award of attorney's fees bears the burden to document "the

---

[7] The *Johnson* factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability'" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 488 F.2d at 717-19.

hours reasonably spent by counsel, and thus must support its request by providing contemporaneous time records reflecting, for each attorney and legal assistant, the date, the hours expended, and the nature of the work done." *Id*. at 209 (internal citations, quotation marks, and alteration omitted).

In the instant case, in support of the request for attorney's fees, Plaintiffs' counsel, Attorney Carney, submitted an Affirmation in which she states that she is an associate at the firm Barnes, Iaccarino, & Shepherd, LLP and that the hourly rate for her and another attorney involved in this matter is $200.00. *See* Carney Aff. III. Annexed to Attorney Carney's Affirmation is a statement of the tasks performed on behalf of Plaintiffs in connection with the case and the amount of time spent on each task. These records show that counsel spent a total of 11.5 hours on tasks related to the prosecution of this action on behalf of Plaintiffs. Based upon the documentation provided to the Court, I find counsel's hourly rate to be reasonable, and such rate is well within the parameters found reasonable by other courts in this District, as discussed above. The number of hours expended in bringing this case to a resolution, as set forth in counsel's affirmation, is likewise reasonable. Accordingly, I respectfully recommend to Judge Hurley that Plaintiffs be awarded the requested attorney's fees in the amount of $2,300.00 (11.5 hours x $200.00 hourly rate).

Plaintiffs also seek costs in the amount of $525.00. Courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir.1987) (citation omitted). Here, Plaintiffs' request for costs consists of $350.00 for the filing fee in this action and $175.00 for a process server. *See* Statement of Damages, DE 4-5. The

payment of the $350.00 filing fee is reflected on the docket. The bill for the process server submitted by Plaintiffs, however, reflects only a $50.00 charge. Plaintiffs are only entitled then to that amount. *See* Carney Aff. I, Ex. D. The Court finds that the charges incurred are reasonable and therefore recommends to Judge Hurley that Plaintiffs be awarded $400 in costs.

The total award recommended for attorney's fees and costs is $2,700.00. This amount is less than the cap on legal fees of fifteen percent (15%) of the delinquent amount, $3,776.25 ($25,175.04 x .15), set forth in the CBA.

## V.    CONCLUSION

Based upon the foregoing information, I respectfully recommend to Judge Hurley that an Order be issued requiring Annex General to submit to an immediate audit of its books and records for the period July 1, 2009 through December 31, 2009. If Annex General fails to submit to an audit within the time period prescribed by Judge Hurley, then I recommended that Plaintiffs be awarded damages as follows: (i) $25,175.04 for unpaid benefit contributions; (ii) interest on the delinquent benefit contributions in the amount of $6.90 per day from April 20, 2010 until the date judgment is entered; (iii) liquidated damages in the amount of $6.90 per day from April 20, 2010 until the date judgment is entered; and (iv) $2,700.00 in attorney's fees and costs. Plaintiffs are also entitled to post-judgment interest "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System for the calendar week preceding[] the date of the judgment." 28 U.S.C. § 1961(a).

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a) and (e). Such objections shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the chambers of the Honorable Denis R. Hurley, and to the chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 188 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for the Plaintiffs is directed to serve a copy of this Report and Recommendation on the Defendant forthwith and to file proof of service on ECF.**

                                            **SO ORDERED.**

Dated: Central Islip, New York
         March 2, 2012

                                          /s/ A. Kathleen Tomlinson
                                          A. KATHLEEN TOMLINSON
                                          U.S. Magistrate Judge